### [No. 3527.]

### SILAS CRAIG v. THE STATE.

1. RAPE.— Between rape perpetrated upon a child under the age of ten years and rape upon a female over that age there is a material difference in the elements of the crime. In the former instance neither force, fraud, threats, nor want of consent is an element of the crime; whereas in the latter case they are.

2. SAME — CHARGE OF THE COURT.— Indictment for an assault with intent to rape one J. M. by force and against her will alleged that she was a "female person, and in stature, constitution and development a child;" but did not allege that she was under the age of ten years. The evidence conflicted as to whether J. M. was under or over the age of ten years. The trial court charged the jury that carnal intercourse with a female child under the age of ten years, or with a female who in stature, constitution and development was a child, is rape, irrespective of force, threats, fraud or consent. *Held*, fundamentally erroneous, because it submits an issue not presented by the indictment, to wit, the age of the assaulted female; and because, if the female was over the age of ten years, no matter what her stature, constitution or development, the want of her consent was an element of the offense and necessary to be proved.

APPEAL from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

The conviction in this case was for an assault with intent to rape one Jessie Massey, in Falls county, Texas, on the 2d day of August, 1884. A term of two years in the penitentiary was the penalty assessed by the jury.

Jessie Massey was the first witness for the State. She testified that, on her way home from the house of Sarah Ann Shaw, in Falls county, Texas, between sundown and dusk, some time in August, 1884, and while she was passing through Stephens's pasture, she was overtaken by the defendant, who asked her if she would not go with him to church that night. Witness replied that she would not.

Defendant then asked her to "give him some," which the witness peremptorily and positively refused to do. Defendant then said that witness "must be c—d," and offered her a nickel to submit. Witness refused, when the defendant seized her, threw her down, and attempted to pull up her clothes, tearing and disarranging them. Witness struggled to keep her clothes down. In his struggle with witness defendant caused her mouth and nose to bleed, and her breast and stomach to swell. This all occurred in Falls county, Texas, on or about the day alleged in the indictment.

Cross-examined, the witness testified that when she was overtaken by the defendant, as stated, she was about eighty yards distant from Mr. Smith's house, but saw no one on those premises. She did not scream or call for help. Defendant stood the witness on her head, placed his arms about her legs, and struggled to get her clothes up, until she told him that when she reached home she would tell her father. The defendant then released her and fled, and witness went home. Witness had been to Sarah Ann Shaw's house. From there she went to Thornton Craig's house, and thence, after a short time, she went home. She did not see the defendant on that afternoon until he overtook her in Stephens's pasture. Witness walked fast after leaving Thornton Craig's house, and did not stop on the way. She had to repass Sarah Ann Shaw's house on her way home. She left the main road at Sarah Ann Shaw's house, passed through her yard into Stephens's pasture, and took a trail through it, which was a shorter route home than by the road. Witness, in a month after this trial, would attain her eleventh year of age. This trial was had on the 5th day of February, 1885.

Re-examined by the State, the witness testified that, as soon as she reached home, she told her mother of the defendant's assault upon her. She did not scream or cry out because the defendant, having his hand over her mouth, prevented her. Witness did not consent that the defendant should touch her or have any connection of any kind with her. Witness had known the defendant for a long time, and could not have been and was not mistaken as to his being the person who assaulted her in the manner stated.

Rebecca Massey, the mother of the alleged injured female, testified that, after sundown on one day in August, 1884, Jessie came home crying moderately, with her dress torn in front and her nose and mouth bleeding. She also had a bruise over one eye. She told witness of the assault upon her by the defendant. Witness made no examination until she went out and milked, occupying about one hour in that task. Jessie was then asleep on the bed. Witness

lived opposite and across the road from Mr. Smith's. Jessie was nine years old.

Cross-examined, the witness stated that she believed that, on the examining trial, she testified that Jessie was eleven years old, and, upon reflection, believes that statement to be correct.

W. W. Hunnicutt testified, for the State, that he was familiar with the topography of Stephens's pasture and the relative positions of the houses occupied by the freedmen Massey, Shaw, Craig and Mr. Smith. A road runs along the north side of the pasture. Massey lives immediately on the north side of the road, and Smith immediately on the south side, the road or lane dividing the two houses. A path runs across the pasture south from Smith's house. That path strikes the road again at Antrim Shaw's house, and thence runs south to the house of Thornton Craig, where the defendant lives. The road first mentioned runs in an easterly direction from the houses of Smith and Massey; thence in a southerly direction around the eastern boundary of the pasture, and thence westerly on the south side of the pasture to Antrim Shaw's, where the said path from the pasture comes into it; from which point it turns south to Craig's house. Near the southeast corner of the pasture is the church mentioned by the prosecuting witness as the one defendant invited her to attend. The pasture fence, which is not the nearest fence, is two hundred yards distant from the church.

Antrim Shaw was the next witness for the State. He testified that he was the husband of Sarah Ann Shaw. He was at home on the evening in question, and saw both the defendant and Jessie Massey when they passed his house. Jessie passed through witness's yard, into the path through Stephens's pasture which led towards her home. Shortly afterwards the defendant passed, taking the same route. Witness asked him where he was going, and he said, "to church." Witness then asked him if he was not early, and he replied that he was going to sweep out the church before services. Witness, after defendant passed, cut some wood, ate his supper, and went to church. On his arrival he found the defendant sitting on the fence of the pasture, about two hundred yards from the church. Witness asked him why he was not at church, and he replied that he had been there, but that no one else had, and that the church was closed. He got down from the fence and went with witness to the church. It was closed and empty. It was between sundown and dark when the defendant passed the witness's house, and it was about thirty minutes later when witness went to the church. The church was about a half mile distant from witness's house. From

the witness's house the lane to the church runs in an easterly direction. The path through the pasture runs south. Jessie Massey had been gone but a short time when defendant passed witness's house.

John Massey, the father of Jessie, testified that he got home from Kosse about 8 o'clock on the night of the alleged assault. Jessie was then in bed and asleep. Witness and his wife examined Jessie together. Her dress was torn in front, and there was dry blood on her face. The kernels of her throat were swollen, and appeared to have been injured. Jessie would attain her ninth year within a month succeeding this trial.

. Alex. Graves was the first witness for the defense. He testified that between sundown and dark on the evening of the alleged offense, he met the defendant in the lane between the church and Antrim Shaw's house. He was then going towards the church. The point of meeting was about one hundred yards from the point where the lane turns east, going towards the church. Witness saw no one in the pasture, but looked for no one.

Sarah Ann Shaw was the next witness for the defense. She testified that she knew the defendant and Jessie Massey. Jessie attended witness home from her mother's house, on the evening of the alleged assault. From witness's house she went to Thornton Craig's house, and passed witness's house again, going home, at good dusk. She had ample time to have covered half the distance home before Silas Craig, the defendant, passed. Witness did not notice how fast she walked.

. The motion for new trial presented the questions discussed in the opinion.

*Martin & Dickinson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Willson, Judge. This appeal is from a conviction for an assault with intent to rape one Jessie Massey. The indictment charges that the said Jessie Massey was "a female person, and in stature, constitution and development a child;" but it does not allege that she was under the age of ten years. It alleges that the rape was attempted by force, and against the will and consent of the said Jessie Massey. There was a conflict of evidence as to the age of the female, some of the testimony being that she was not ten years old, while other testimony showed that she was eleven years old.

The court charged the jury as follows: "You are further charged that sexual intercourse with a female child under the age of ten

years, or with a female who, by reason of her stature, constitution and development, is a child, is rape, and in such case it becomes wholly immaterial whether the same was obtained by force, threats or fraud, or whether with or without consent, and in this connection you are charged that if you believe from the evidence beyond a reasonable doubt that defendant made an assault upon Jessie Massey with intent to have sexual intercourse with her as alleged, and you further believe from the evidence beyond a reasonable doubt that the said Jessie was under the age of ten years, or that she was, by reason of her stature, constitution and development, a child, then you should convict."

This charge, we think, is materially erroneous. It submits to the jury an issue not presented by the indictment, that is, the *age* of the assaulted party. Under this indictment the defendant could not be legally tried and convicted for an assault with intent to have carnal intercourse with a female under ten years of age. He was not called upon to meet such a charge, and cannot be presumed to have been prepared with evidence to prove that the assaulted female was over the age of ten years. There is a very material difference in the essentials of the crime of rape, when perpetrated upon a child under the age of ten years, and when perpetrated upon a female over that age. In the former instance, *force, fraud* or *threats*, and *want of consent*, are not elements of the offense, while in the latter they are. It is not rape for a male to have carnal intercourse with a female over the age of ten years, with her consent. (Penal Code, art. 523; *Anschicks* v. *The State*, 6 Texas Ct. App., 524.) If the female be over ten years of age, her want of consent must be shown, no matter what may be her stature, constitution or development. (*Baldwin* v. *The State*, 15 Texas Ct. App., 275.) Her "stature, constitution and development" may be shown and considered in determining the issue as to whether or not she consented, but the mere fact that in these respects she is a child does not make it rape to have carnal intercourse with her, if she be over ten years of age, and consent to such intercourse. The charge as to the stature, constitution and development of the assaulted female is not warranted by the evidence before us. There is no evidence whatever in the record showing that in these respects she was a child.

Because of the errors in the charge of the court, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Opinion delivered June 3, 1885.]